ANGELINA FUENTES, Petitioner, *v.* DISTRICT COURT OF PUERTO RICO, HUMACAO SECTION, Defendant; DOMINGO FUENTES OSORIO, Intervener.

No. 1918. Argued August 26, 1952.—Decided October 17, 1952.

894

*Bolívar Pagán* for petitioner. *Juan Nevárez Santiago* for intervener, plaintiff in the main action.

MR. JUSTICE ORTIZ delivered the opinion of the Court.

On May 31, 1946 Domingo Osorio, known also as Domingo Motta Osorio, filed in the former District Court of Humacao, to which we shall hereinafter refer as the Humacao Court, a Filiation Suit and Claim of Inheritance against the unknown heirs of Manuel Fuentes, designated as the unknown heirs John Doe and Richard Roe. Said complaint stated that plaintiff Domingo Osorio was born on May 24, 1891, as the natural son of Ramona Osorio; that plaintiff's alleged father Manuel Fuentes Ramos lived in concubinage with Ramona Osorio, that is, plaintiff's mother, as a result of which Domingo Osorio was born, being Manuel Fuentes a bachelor at the time of plaintiff's conception and birth; that plaintiff enjoyed the uninterrupted condition of natural son of Manuel Fuentes and that said Manuel Fuentes Ramos died on March 22, 1946, without leaving a will or having married, and "leaving no other heirs known to plaintiff except plaintiff himself."

Being the heirs unknown, notice was served by publication and after the running of the corresponding statutory period, no one appeared to object to the complaint and plaintiff obtained a default judgment after the corresponding hearing in which oral and documentary evidence was introduced. In the judgment, rendered on September 24, 1946, the Humacao Court held that plaintiff was the natural acknowledged son of Manuel Fuentes Ramos with all the rights and duties which the law grants him as such and the corresponding entry of the judgment in the Vital Statistics of Fajardo was ordered. In that same judgment the second cause of action alleged in the complaint was dismissed insofar as it requested the delivery to plaintiff of certain property which belonged to plaintiff's father and alleged to be

in the possession of Mercedes, Angelina and Cruz Fuentes. It was stated in the judgment that inasmuch as those persons had not been made parties to the suit nor had they been duly summoned, said second cause of action was dismissed. No appeal was taken from said judgment, and it became final and unappealable.

Mercedes Fuentes de Jesús, Cruz Fuentes Pérez and Felipa Fuentes Romero, subsequently filed in the former District Court of San Juan, to which we shall hereinafter refer as the San Juan Court, an action for Annulment of Judgment, Revendication and Other Reliefs, to which we shall hereinafter refer as the annulment suit. In said Annulment suit it was briefly alleged that Manuel Fuentes Ramos died in San Juan on March 22, 1946, and that by decision of the San Juan Court dated May 23, 1946, the three afore-mentioned plaintiffs were acknowledged as the sole and universal heirs of the aforesaid Manuel Fuentes Ramos. It was further alleged in the Annulment suit that the judgment rendered by the Humacao Court was null and void because the three plaintiffs, who were the nieces of Manuel Fuentes Ramos, their ancestor, had not been included as parties nor summoned in the action brought to the Humacao Court and that the averments of plaintiff Domingo Osorio, by virtue of which he obtained a summons by publication, were false and thus to the knowledge of Domingo Osorio, who actually knew that those plaintiffs were the heirs of Manuel Fuentes Ramos and that therefore this was not the case of unknown heirs. Domingo Osorio, defendant in the Annulment suit, answered denying the facts and pleading certain special defenses.[1] The issue thus joined, the Annulment action was brought to court and after plaintiffs introduced their evidence, the court, at defendant's petition, rendered judgment dismissing the complaint as to Mercedes Fuentes

---

[1] Domingo Osorio's averments in the Annulment action do not form part of the record herein but the San Juan Court referred to those averments in its Resolution and Judgment.

de Jesús and Cruz Fuentes Pérez inasmuch as they were illegitimate nieces of Manuel Fuentes Ramos and therefore, had no standing to sue. Plaintiff Felipa Fuentes, known as Angelina Fuentes, then told the court that she waived any controversy raised by the complaint other than the annulment of the judgment rendered by the Humacao Court declaring Domingo Osorio the natural acknowledged son of Manuel Fuentes Ramos and the annulment of the subsequent proceedings based on said judgment. Considering the evidence introduced, the San Juan Court rendered judgment on February 9, 1951 sustaining the action for Annulment of Judgment and other Reliefs and setting aside the judgment by default rendered by the Humacao Court on September 24, 1946 on filiation and claim of inheritance, by virtue of which plaintiff therein, Domingo Osorio, had been declared the acknowledged natural son of Manuel Fuentes. The judgment in the Annulment suit also set aside the decision rendered by the San Juan Court on October 2, 1947, declaring Domingo Osorio the sole and universal heir of Manuel Fuentes and it decreed the annulment of the entry recorded in the Vital Statistics of Fajardo by virtue of which Domingo Osorio's name had been changed to Domingo Fuentes Osorio. In the Findings of Fact and of Law made by the San Juan Court, and which served as a ground for the afore-mentioned judgment, the lower court held, in brief, that Manuel Fuentes Ramos had died on March 22, 1946; and that he was the legitimate son of Vicente Fuentes and Valentina Ramos and that Felipa Fuentes Romero, plaintiff in the Annulment suit, was and is the legitimate daughter of Zenón Fuentes Ramos; who in turn was the legitimate brother of the ancestor Manuel Fuentes Ramos, that Domingo Osorio had known Felipa Fuentes Romero for over 20 years and likewise knew that she was the legitimate niece of Manuel Fuentes Ramos and that when the latter died he did not leave any parents or brothers alive. The San Juan Court concluded that since Domingo Osorio had knowledge

of the fact that Felipa Fuentes Romero was the legitimate niece of Manuel Fuentes Ramos, he knew, at the time he filed his filiation suit, the persons who were the heirs of Manuel Fuentes and that, thereby, according to the San Juan Court, the averments or statements made by Domingo Osorio in his complaint as well as in the motion requesting the summons of defendants by way of edicts, in the sense that he did not know the heirs of Manuel Fuentes, were not true. The San Juan Court held that Domingo Osorio had concealed those facts to the Humacao Court for the purpose of obtaining the summons by publication of edicts, thus avoiding the obligation of personally summoning Manuel Fuentes' nieces and the San Juan Court stated that Domingo Osorio had actually testified to the effect that he knew beforehand that Felipa Fuentes Romero was the legitimate niece of Manuel Fuentes Ramos. It also held that the complaint in the filiation suit was not verified and neither was the motion requesting the summons by edict, and the affidavit of merits attached to said motion did not state facts constituting a cause of action in favor of plaintiff and since this was a jurisdictional requirement the order to publish the edict was void and so was the judgment for lack of jurisdiction and also on the additional ground that it had been obtained by way of false averments made by Domingo Osorio as to the fact that the heirs were unknown.

No appeal was taken from the judgment rendered by the San Juan Court sustaining the complaint in annulment suit and it became final and unappealable. Thereafter, on May 4, 1951, Domingo Osorio filed an amended complaint in the District Court of Puerto Rico, Humacao Section, in an action of Filiation and Claim of Inheritance against Manuel Fuentes, today his heirs, John Doe and Richard Roe and Felipa Fuentes, known as Angelina Fuentes. The amended complaint differs from the original complaint in that in the former Felipa Fuentes was included as a party and as one of the heirs of Manuel Fuentes. The second cause of action

which had been previously dismissed by the same Court of Humacao was eliminated. Defendant Angelina Fuentes then appeared and answered the complaint denying all the facts alleged in the amended complaint and urged that said amended complaint did not state facts constituting a cause of action against her. As an additional defense it was set forth that defendant Angelina Fuentes had been made a party to the suit on May 4, 1951 and that, therefore, the action had prescribed pursuant to § 137 of the Civil Code in force in Puerto Rico at the time of plaintiff's birthday, §§ 189 and 199 of the Revised Civil Code of 1902, and §§ 193 and 194 of the Civil Code of Puerto Rico as amended by Act No. 73 approved in 1911.

On May 31, 1951 defendant Angelina Fuentes filed in the Humacao Court a motion for summary judgment in the filiation suit, alleging what has been previously stated that the action against Angelina Fuentes had prescribed, by virtue of the afore-cited Sections of the Civil Code. Defendant attached to the motion for summary judgment, the judgment and opinion rendered by the San Juan Court in the annulment suit, which judgment and opinion we have already set forth. The Humacao Court overruled said motion for summary judgment filed by defendant Angelina Fuentes dismissing also two motions for reconsideration presented by the defendant. The court held that the action against Angelina Fuentes had not prescribed inasmuch as the original complaint in the filiation suit had been filed on May 31, 1946, that is, within a year after the death of Manuel Fuentes Ramos and that said original complaint had interrupted the running of the statute of limitations, pursuant to § 1873 of the Civil Code of Puerto Rico.

Challenging the decision rendered by the Humacao Court overruling the motion for summary judgment, defendant Angelina Fuentes filed in this Court a petition for certiorari, and this Court issued the writ, whereupon the corresponding record was sent up to this Court.

■ The problem now before us is to determine whether or not the amended complaint against Angelina Fuentes has prescribed, and whether the original complaint filed by Domingo Osorio against the unknown heirs of Manuel Fuentes Ramos constituted a legally sufficient interruption of the statute of limitations applicable to filiation suits filed by a natural child.

Petitioner Angelina Fuentes alleges at the outset that the filiation suit against her and against the other defendants has prescribed pursuant to § 137 of the Spanish Civil Code effective in Puerto Rico at the time of plaintiff's birth and pursuant to § § 198 and 199 of the Revised Civil Code approved in 1902. In the filiation suit it is alleged that plaintiff Domingo Osorio was born on May 24, 1891. The former Spanish Civil Code was in force in Puerto Rico at that time and until 1902. Under § 137 of said Code actions for the acknowledgment of natural children had to be commenced only during the lifetime of the putative parents or if they had died during the minority of the child, the action could commence within the four years following the attainment of his majority. Said § 137 was substituted in the year 1902 by § 199 of the Revised Civil Code of 1902, which provided that an action to claim filiation may be filed at any time within two years after the child shall become of age. As to the history of those statutory provisions on the prescription of filiation suits see *Gual et al.* v. *Bonafoux*, 15 P.R.R. 545, 551, 555; *Orta* v. *Arzuaga et al.*, 23 P.R.R. 241; *Torres* v. *Heirs of Cautiño*, 70 P.R.R. 614, 619 and *Cortez* v. *Heirs of Solá*, 72 P.R.R. 585. Should § 137 of the former Spanish Civil Code in force at the time that Domingo Osorio was born, or § 199 of the Revised Civil Code of 1902 apply exclusively to this case, the original complaint as well as the amended complaint introduced by said Domingo Osorio would have prescribed and the motion for summary judgment then should have been sustained, inasmuch as the filiation suit was not commenced while Manuel Fuentes Ramos was alive

but 34 years after Domingo Osorio had become of age. However, in 1911, when plaintiff was about 20 years old, our Legislature amended the Civil Code as to the statutory limitations for filiation suits, since § 199 of the Civil Code of 1902 was expressly repealed by Act No. 73 of March 9, 1911, approving instead § 194 which corresponds to § 126 of our present Civil Code, 1930 ed. Said § 126 of our Civil Code, which has been effective since March 9, 1911 up to the present date provides that the action for the recognition of natural children, can only be established during the life of the presumptive parents, and a year beyond their death except in certain instances not in point herein. Said § 126 was in force at the time of Manuel Fuentes Ramos' death, that is, on March 22, 1946, as alleged in the complaint. If § 126 were applied to the case at bar, it would follow that Domingo Osorio filed his original filiation suit within the year subsequent to the death of his alleged ancestor Manuel Fuentes Ramos.

This Supreme Court has previously held that § 126 of our Civil Code, approved by virtue of the Act of March 9, 1911, can not have application to an action to claim filiation when said action has already prescribed at the time said Act of March 9, 1911 became effective. *Jesús* v. *Succession of Pérez Villamil*, 18 P.R.R. 392; *Roble* v. *Succession of Pérez*, 18 P.R.R. 894; *Ramírez et al.* v. *Ramírez et al.*, 30 P.R.R. 574; *López* v. *López et al.*, 23 P.R.R. 766 and *Resto* v. *Silva et al.*, 38 P.R.R. 299. Once the statutory period has run, a natural son can not revive his extinguished right by virtue of the provisions of an Act approved after the statutory period has expired. *Questel* v. *Conde et al.*, 18 P.R.R. 727 and *Orta* v. *Arzuaga et al.*, *supra*. The ruling above mentioned is not aplicable to the circumstances and facts in this case such as they appear from the averments and documents submitted to the lower court in deciding the motion for summary judgment. When § 126 of the Civil Code was approved on March 9, 1911, Domingo Osorio's alleged ancestor, Manuel Fuentes Ramos, was still living, and, therefore, the re-

medy afforded to Domingo Osorio by the provisions of § 137 of the former Spanish Civil Code was still available to him. On March 9, 1911 Domingo Osorio was not yet of age and, therefore, the remedy or the cause of action to which he could have resorted under § 199 of the Revised Civil Code of 1902 had not expired either. Immediately before approving § 126 on March 9, 1911, claimant herein had the potential right or expectancy of claiming his filiation within the two years after his majority, which he would attain on May 24, 1912. Section 126 granted Domingo Osorio at least an additional and more ample right, that is, that he could file his filiation suit within the year subsequent to the date of his ancestor's death, even though at said time the two years subsequent to his majority granted by § 199 of the Revised Civil Code of 1902 [2] had already elapsed. When his alleged ancestor died, claimant herein, Domingo Osorio, was entitled to avail himself of the provisions of § 126 of our Civil Code, since the afore-mentioned §§ 137 of the former Spanish Civil Code and 199 of the Revised Civil Code of 1902, were not in point herein, keeping well in mind that § 126 upon being incorporated into our Civil Code by virtue of the Act of March 9, 1911, did not have the effect of reviving rights that had already expired, but rather buttressed and enlarged the cause of action enjoyed by plaintiff in the case at bar.

In *González* v. *Rodríguez*, 43 P.R.R. 63, the following is set forth:

"This was a suit for filiation. The District Court of Arecibo rendered the following opinion upon sustaining a demurrer:

---

[2] By analogy see *Torres* v. *Heirs of Cautiño*, 70 P.R.R. 614, where the following is stated at page 621:

"Under the law in force when plaintiff was born he acquired a right and was entitled to a statutory period within which he could file an action to establish said right in court. Subsequently the lawmaker repealed said specific term while the plaintiff was a minor, but it did not deprive him of his action, since he granted him the fifteen–year supplemental period specified in the code to institute personal actions, which is more than reasonable, since it extended by thirteen years, the original period which the plaintiff had under § 199, *supra*."

" 'On September 28, 1929, Jovito González brought an action of filiation in the District Court of San Juan against Jovito Rodríguez, and averred that he was born in Morovis on the 3rd of March 1903, while his mother, Ventura González, and his alleged father, Jovito Rodríguez, were living in public concubinage; that said Jovito Rodríguez considered him privately and publicly as his son, acting with regard to him as a father towards his son, and that such relations have at no time been interrupted since the birth of the complainant. The defendant demurred to the complaint on the ground of prescription. Pursuant to an order for a change of venue, this case has come before this court.

" 'The demurrer was heard on March 17, 1930, the parties appearing through their attorneys, and the case remained under advisement.

" 'The plaintiff was born, as he alleges under oath, on the 3rd of March, 1903, and therefore came of age on the 4th (sic) of March, 1924. In accordance with section 199 of the Civil Code in force at the date of his birth, an action of filiation only lasted two years after he had come of age. The action, therefore, only could have been begun on or before the 3rd of March, 1926. The complaint was filed, as we have said, on the 28th of February, 1929, when the action had already prescribed. *Jesús* v. *Succession of Pérez Villamil*, 18 P.R.R. 392; *Orta* v. *Arzuaga*, 23 P.R.R. 241.

" 'The demurrer is sustained.'

"The appellee suggests that the case of *Ciuró* v. *Ciuró*, 31 P.R.R. 691, is also applicable.

"We have little or nothing to add to the previous jurisprudence on the matter. It seems to us that the attempts of the appellant simply cover the same ground that was covered by the losing parties in the previous cases."

We must bear in mind that in this last case of *González* v. *Rodríguez* plaintiff was born on March 3, 1903 and that, therefore, when § 126 of our Civil Code was approved on March 9, 1911 his cause of action had not yet prescribed or expired. However, this Court did not entertain the possibility of applying said § 126 which entitled plaintiff to file his filiation suit within a year after the death of his ancestor. When the complaint was filed plaintiff's putative fa-

ther was still alive. Under the afore–cited § 126 plaintiff was entitled to exercise his action while his putative father was alive or within a year after his death. Plaintiff filed his action while his putative father still lived and under § 126 his action had not prescribed. We actually believe and hold that the opinion delivered by this Court in said case of *González* v. *Rodríguez* bears a too restrictive criterion and that it departs from the juridical reality that sprang from the approval of the afore–mentioned § 126 and deprived plaintiff of his opportunity to avail himself of the provisions of the afore–cited § 126 of our Civil Code. Therefore, the afore–mentioned case of *González* v. *Rodríguez* must be regarded overruled.

Precisely in *Ortiz* v. *Stella*, 47 P.R.R. 111, the doctrine contained in *González* v. *Rodríguez*, *supra*, was disapproved, although the case was not expressly overruled. In this last case of *Ortiz* v. *Stella*, *supra*, the following was held:

"A child born while the Revised Civil Code was in force and whose right to exercise his action of filiation would not have prescribed in 1911, the date when the amendments to said Code were adopted repealing Section 199 and approving Section 194, can bring the action of filiation within one year of the death of his alleged father."

At pages 114 and 115 the following is stated:

"In the case of *Guadalupe* v. *González* an action of filiation was begun November 10, 1931. It was proved that the plaintiff was between 23 and 25 years old at the time the complaint was filed, therefore that he was born under the provisions of Section 199 of the Civil Code, and before Section 194 of that same Code was approved in 1911. 'Therefore,' the Court stated, 'the law applicable according to the fourth of the Transitory Dispositions of the Civil Code would be Section 194 of the said Code, as amended in 1911, and as by that amendment it is established that an action for acknowledgment can be brought during the life of the putative parents, *or one year after their death,* and as a year after the death of the putative father had not elapsed when the action was brought in this case, the trial court erred in holding that the action was barred.'

"It is quite clear that in the cases of *Guadalupe* v. *González* and *González* v. *Rodríguez* the right to establish the action of filiation had not prescribed in 1911, when the amendments to the Civil Code were approved. These cases are in support of different rules. The first one is in regard to Section 194, approved in 1911, and not the law in force at the time of the birth of the plaintiff, and sustains that the action is not barred; the second one sustains that the law applicable is the one existing at the time of the birth of the plaintiff and that according to that act the right of action subsisted but for two years after his majority.

"The case at bar is reconcilable to the ones we have just cited. Mateo Ortiz was born in November 23, 1902, when the law in force provided that the right of action of filiation prescribed two years after the party reached his majority. In 1911, when the amendments to the Civil Code were approved, the plaintiff was not as yet nine years old. His right to claim filiation was still outstanding. His action had not prescribed by the passing of time. The plaintiff filed suit February 18, 1930, before one year of the death of his presumptive father had elapsed, who died December 27, 1929. Did the new law extend his right to claim recognition to one year after the death of his presumptive father or was that right extinguished upon arriving to his twenty–third birthday? This is the issue we must decide that the opinion of this Court may be settled."

At page 119 the following is set forth:

". . .The retroactive nature of the fourth rule applied to the case at bar does not prejudice a vested right because in 1911, when the Civil Code was amended, the action of Mateo Ortiz was existent in full force and effect, and if it was not extinguished and the extinguishment thereof depended upon the passage of time, the mere expectancy or hope of which Manresa speaks, which depends on myriad eventualities, had not become a vested right at the time the amendments to the Civil Code were adopted.

"We are of opinion that the doctrine set forth by this Court in the case of *Guadalupe* v. *González, supra,* should prevail, and that the right of action has not prescribed."

*Torres* v. *Heirs of Cautiño,* 70 P.R.R. 614, dealt with an adulterine child. It was held that § 199 of the Civil Code of 1902 did away with the historical distinction between the

natural child and other illegitimate children but that upon approving Act No. 73 in 1911 (§ 194 now § 126 of the Civil Code), said distinction was re-established and, although a limitation period for natural children was fixed, none was established for adulterine children. It was held therefore, that the latter could avail themselves of the 15-year prescriptive period, after their majority, fixed for personal actions by § 1864 of the Civil Code in connection with § 40 of the Code of Civil Procedure. However, in the course of its opinion, by way of *dictum* and upon commenting *Ortiz v. Stella, supra*, which referred to a natural child, this Court seems to imply that the limitation period of 15 years computed after the majority of age is also applicable to natural children. (Pp. 622 and 623 of *Torres v. Heirs of Cautiño*.) As we have previously stated, Act No. 73 of 1911 actually fixed a specific prescriptive period for natural children, that is, it provided that the natural children could establish action for their recognition during the life of the presumptive parents and a year beyond their death. Therefore, § 1864 of our Civil Code which provides that personal actions that do not have a special term of prescription, shall prescribe after 15 years is not applicable to a natural child as is the case herein, inasmuch as the action of filiation of a natural child has a special term of prescription under said Act No. 73 of 1911. The afore-mentioned *dictum* set forth in *Torres v. Heirs of Cautiño, supra*, is incompatible with this opinion, and therefore, it must be considered overruled. The 15-year limitation period computed after his majority is not applicable to a presumptive natural child as the one involved herein. He is governed by the prescription period established in § 126 of our Civil Code.

In *Cortez v. Heirs of Solá, supra*, the plaintiff and presumptive adulterine child was born on May 31, 1893 and his putative father died on August 5, 1918. This Supreme Court held that since plaintiff was an adulterine child he was not governed by any limitation period whatsoever, and hence,

that neither § 137 of the Spanish Civil Code nor § 199 of the Revised Civil Code of 1902 nor § 194 which corresponded to the present § 126 of said legal body was applicable. *Torres* v. *Heirs of Cautiño, supra*. When plaintiff's putative father died, the former had no right to an action of filiation, because of his status of adulterine child but upon the enactment of Act No. 243 of May 12, 1945, (Sess. Laws, p. 814) which amended No. 229 of May 12, 1942, (Sess. Laws, p. 1296) a cause of action arose in favor of adulterine children, the action being instituted pursuant to the procedure fixed by the Civil Code for the acknowledgment of natural children, that is, within a year beyond the death of the presumptive parent. Although the presumptive parent had died on August 5, 1918, this Court held, incidentally, that the adulterine child could have exercised his action not a year beyond the death of his father but within the year subsequent to the effectiveness of the afore-cited Act No. 243. However, in said case plaintiff filed his action after more than one year had elapsed after the approval of Act No. 243 and, therefore, his action had prescribed.

 In conclusion, Domingo Osorio filed his original complaint under the provisions of § 126 of our Civil Code, which is applicable to the case at bar. However, he did not file his original complaint against Felipa Fuentes known as Angelina Fuentes. Upon including said Angelina Fuentes in his amended complaint as a party to the suit, a year had already elapsed after Manuel Fuentes' death. It is alleged that the original complaint operated as a valid interruption of the prescription of the action filed herein.

Sections 1873 and 1874 of our Civil Code provide as follows:

"Section 1873.—Prescription of actions is interrupted by their institution before the courts, by extrajudicial claim of the creditor, and by any act of acknowledgment of the debt by the debtor.

"Section 1874.—Interruption of prescription of actions in joint obligations equally benefits or injures all the creditors or debtors.

"This provision is likewise applicable with regard to the heirs of the debtor in all kinds of obligations.

"In obligations in common, when the creditor does not claim from one of the debtors more than the part pertaining to him, prescription is not interrupted for that reason with regard to the other codebtors."

The original complaint was filed against the heirs of Manuel Fuentes, who are the unknown heirs John Doe and Richard Roe. An action against some of the heirs interrupts the prescription against other co-heirs inasmuch as under the afore-cited § 1874 of our Civil Code interruption of prescription of actions in joint obligations equally benefits or injures all the creditors or debtors. The heirs are joint debtors. They are jointly liable for the obligations of the ancestor whether or not the division of the inheritance has taken place. *Morales* v. *Cabrera*, 53 P.R.R. 90; *Brunet* v. *Heirs of Nin*, 57 P.R.R. 789 and *Hernández et al.* v. *Cuevas et al.*, 16 P.R.R. 519.

In the Louisiana case of *Zeller* v. *Louisiana Cypress Co.*, 121 So. 670, it is held that a suit filed against one of several solidary obligors interrupts prescription as to the others. See also *Cox* v. *Shreveport*, 34 So. (2d) 373.

In *Maurin* v. *Martínez*, 2 La. Rep. 120, 5 Mart (O. S.) 432, it is held that a suit against heirs interrupts prescription as to other parties.

In 12 Manresa 964, 1951 ed., in dealing with the interruption of the prescription terms through the filing of a complaint the following is set forth:

"What has been set forth as to joint obligations is likewise applicable with regard to the heirs of the debtor as to obligations of all kinds, inasmuch as each and everyone of them represent the deceased and jointly succeed him in all his rights and obligations, their position being the same as that of the obligors with regard to the payment of deceased's debts."

In *Gual et al.* v. *Bonafoux et al.*, *supra*, this Court held at p. 554:

"In holding that the action exercised had prescribed, the lower court no doubt held also that the prescription had not been interrupted by the extra judicial claim, and we find no reason for rejecting this conclusion.

"Nay, more; without taking into account what has already been urged to show that the action for acknowledgment has prescribed because the time allowed by the law applicable to the case had expired, it appears to us that article 1973 of the Spanish Civil Code, which is section 1874 of the Revised Code, is not pertinent to the exceptional case of prescription under consideration, inasmuch as article 1938 of the former Civil Code, which corresponds to section 1839 of the Revised Code, prescribes that the provisions of Title XVIII of both Codes, referring to prescription, shall be understood without prejudice to what may be established in either Code with regard to specified cases of prescription.

"The case of prescription under consideration is special and one of such a nature as to preclude interruption, for, if the action for acknowledgment of natural children must be prosecuted only within the time fixed in article 137 of the Spanish Civil Code applicable to the case, it is evident that the action disappears and extinguishes, after the lapse of the time allowed for its prosecution.

"In fixing a certain and definite time for the exercise of the action for acknowledgment, it would seem that it was the purpose of said Code to avoid uncertainty and threat which might disturb the peace and tranquillity of families."

This last case dealt with an extrajudicial claim and not with the filing of a judicial action. The afore-cited § 1873 of our Civil Code provides that the prescription of actions is interrupted by their institution before the courts. Said statutory provision does not establish any distinction whatsoever between different kinds of actions. Where the law does not distinguish neither ought we to distinguish (*ubi lex non distinguit nec nos distinguere debemus*). Any interpretation which might imply the destruction of the opportunities and remedies afforded to presumptive natural chil-

dren in order that their averments may be considered at a trial on the merits, should not be applied to prescription statutes unless said interpretation be clearly authorized by the very Act.

In *Barros* v. *Padial*, 35 P.R.R. 237, it is held:

"The modern view is opposed to the earlier theory that pleas of prescription are not generally favored by the courts; but the courts will give to a statute of limitation a reasonable interpretation without extending it beyond its clear provisions."

An interpretation of a statute of limitations which implies the establishment of a distinction between different kinds of parties or which produces an unreasonable result must not be adopted. 34 Am. Jur. 42, § 39.

The afore-cited § 1873 of our Civil Code which determines the interruption of the prescription of actions by virtue of judicial claims, must be construed as applicable to actions of filiation and inasmuch as *Gual et al.* v. *Bonafoux et al.*, *supra*, establishes a contrary view, said case must be deemed overruled on this particular. *Ciuró* v. *Ciuró et al.*, *supra*, and *Jesús* v. *Succession of Pérez Villamil*, *supra*, in which the same erroneous opinion as that of *Gual et al.* v. *Bonafoux et al.*, *supra*, is set forth must also be overruled.

Notwithstanding what has been previously set forth, the original complaint does not include as defendant any particular heir but it was filed against the unknown heirs of Manuel Fuentes, that is the unknown heirs, John Doe and Richard Roe. This is not a case in which a specific solidary obligor is originally sued and then another solidary obligor is joined in the amended complaint. Briefly, the original complaint was established against the "unknown" heirs John Doe and Richard Roe. Felipa Fuentes known as Angelina Fuentes (to whom we shall hereinafter refer as Angelina Fuentes) was not originally included as party defendant to the suit. She was an indispensable party in the original complaint. As we have seen, in the annulment judgment rendered by the San Juan Court it was held that Angelina

Fuentes was the legitimate daughter of a late legitimate brother of Manuel Fuentes and that Domingo Osorio was aware of that fact and of Angelina's existence before filing his original complaint in the Humacao Court. Those findings of fact made by the San Juan Court are binding on both parties in the case pending in the Humacao Court, and Domingo Osorio is precluded from impeaching the veracity of those facts determined by the Court under the doctrine of "collateral estoppel by judgment." Although the cases in the San Juan and Humacao Courts involved different causes of action the rule of "res judicata" [3] not being therefore strictly applicable, the San Juan Court made certain findings of fact as to the status of Angelina Fuentes which are essential as to the judgment that might be finally rendered in the Humacao Court. When an ultimate fact which is essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the same parties in a subsequent action although on a different cause of action, under the doctrine of "collateral estoppel by judgment." Restatement, Judgments, § 68; Restatement of the Law, 1948 Supplement, p. 336; *Long Corporation* v. *District Court*, 72 P.R.R. 737; *People* v. *Lugo*, 64 P.R.R. 529; "Collateral Estoppel by Judgment" in 56 Harv. L. Rev. 1; 65 Harv. L. Rev. 840, issue of March 1952; 50 C. J. S. 100, § 656 and p. 196, § 718 and 142 A.L.R. 1243. Angelina Fuentes' condition as legitimate niece and potential heiress of Manuel Fuentes was

---

[3] Incidentally in *Calaf et al.* v. *Calaf*, 17 P.R.R. 185 it is held that "the acknowledgment of a natural child in an action to establish filiation having been denied by final judgment, each decision constitutes res judicata and has effect in another action where there being an identity of litigants and of the character in which they sue or are sued, the annulment of an institution of heirs is sought, and where the principal ground of such annulment would have to be the acknowledgment of said natural child, with all the attending rights, for in that case there is also an identity in the things sued for and in the cause of action, elements which are necessary for the validity of the plea of *res judicata*." This last opinion was affirmed by the National Supreme Court in *Calaf* v. *Calaf*, 232 U. S. 371. See *Aguilera* v. *Pérez*, 51 P.R.R. 1, 7.

essential in the case pending in the Humacao Court especially as to her condition of indispensable party in said case, as we shall see hereinafter.

■ Undoubtedly, inasmuch as Manuel Fuentes left no legitimate descendants or ascendants, if Domingo Osorio were declared by the Court a natural child, this being the case of an intestate inheritance, he would be the sole heir of Manuel Fuentes, excluding the collateral relatives and therefore, excluding Angelina Fuentes. Section 902, Civil Code; *Cádiz* v. *Jiménez*, 30 P.R.R. 33, 37; *Junghanns* v. *Cornell University*, 71 P.R.R. 630, 642; *Espinosa* v. *Berríos et al.*, 33 P.R.R. 296; *Sánchez* v. *District Court*, 69 P.R.R. 457. However, if the status of natural child of Domingo Osorio is not judicially established, that is, if the complaint filed by him in the Humacao Court is dismissed because his filiation is not proved, Angelina Fuentes would be the sole heir of Manuel Fuentes, under § 903 of our Civil Code, which provides that in default of descendants, legitimate ascendants and natural children, the collateral relatives shall inherit, (in the absence of spouses, as is the case herein). Therefore, Angelina Fuentes was an essential and indispensable party in the case pending in the Humacao Court, inasmuch as her inheritance rights inexorably depend on the decision of the case that has been litigated in the present Humacao Section of the Superior Court of Puerto Rico.

Just as it is stated in *People* v. *Henneman*, 61 P.R.R. 184, 189, an indispensable party is one who has such an interest in the subject matter of the controversy that a final decree can not be rendered between the other parties to the suit, without radically and injuriously affecting his interest, or without leaving the controversy in such a situation that its final determination may be inconsistent with equity and good conscience. See 3 Moore's Federal Practice 2150, § 19.07, 2d Ed.; *Chance* v. *Buxton*, 170 F. 2d 187. In *Bank of California* v. *Superior Court*, 16 C. (2d) 516, 106 P. 2d 879, 883, it is held that an indispensable party is one whose

interests, rights or duties will inevitably be affected by any decree which can be rendered in the action. The following is set forth:

". . .Typical are the situations (of indispensable parties) where a number of persons have undetermined interests in the same property, . . . and one of them seeks, in an action, to recover the whole, to fix his share, or to recover a portion claimed by him. The other persons with similar interests are indispensable parties. The reason is that a judgment in favor of one claimant for part of the property or fund would necessarily determine the amount or extent which remains available to the others. . . ." (See also the Annotation in 9 A.L.R. (2d) 10, 70 and 2 Moore's Federal Practice, § 19.08, 2d Ed.)

In the case at bar Domingo Osorio's claim covers the whole of the hereditary property and should his filiation suit prevail, it would entirely exclude any possible participation by Angelina Fuentes. Should his action fail, Angelina Fuentes would be entitled to the whole inheritance. The interest of both parties are mutually exclusive and antagonistic and, therefore, Angelina Fuentes is an indispensable party.

In Louisiana, by specific statutory provision, if the succession be that of a natural mother deceased without legitimate children, the putting into possession of the natural children shall not be pronounced without calling the relations of the deceased, who would have inherited in the default of the natural children. *Taylor* v. *Allen*, 91 So. 635, 644. Said statutory provision coincides with the general rule as to the status of such relatives as indispensable parties.

In his original complaint filed in the Humacao Court, Domingo Osorio ought to have included Angelina Fuentes as the sole defendant party. Instead of doing so, he filed his complaint against John Doe and Richard Roe as presumptive unknown heirs.[4] Inasmuch as Angelina Fuen-

---

[4] Reference made to the heirs of Manuel Fuentes must be considered as surplusage. Actually, he did not sue the estate as an abstract body, but certain unknown heirs.

914

tes[5] existed, the complaint filed against fictitious persons was totally void, it was legally insufficient and, therefore, it could not be operative to interrupt the limitation period as to the action against Angelina Fuentes. Generally speaking, the filing of a complaint against nonexistent or fictitious parties or against wrong defendants does not interrupt the running of the statute of limitations as to a person who should have been originally joined as a party defendant to the suit, inasmuch as he is an indispensable party who existed at the time the original complaint was filed.[6]

The commencement of an action against a nonexistent person or against a wrong defendant (regarding his identity and not a mere misnomer), or against no particular person, does not interrupt the running of the statute of limitations, when the person who could really be joined exists. 54 C.J.S. 317, 304; 8 A.L.R. (2d) 118, 144, 148, 149, 150; *Chandler* v. *Dunlop,* 39 N. E. 2d. 969, 975; *Thompson* v. *Peck,* 181 Atl. 597, 598 and *Gates* v. *Wendling Nathan Co.,* (Cal.) 81 P. 2d. 173, 177, where it is held that when no valid claim is brought against fictitiously named defendants, the complaint does not interrupt the statute of limitations. In said case it is set forth, in part, the following at page 177:

". . .we have yet to read of a case where the running of the statute has been held to be avoided by filing a complaint wherein a defendant is designated by a fictitious name and the only allegations as to him are that the plaintiff is ignorant of the defendant's true name and, when he knows it, will amend by substituting it. . . If procedure of that description can be tolerated, all statutes of limitation might as well be at once and forever repealed. . . ."

---

[5] From the point of view of equity and good conscience, relevant factors as to the indispensability of joining a party, it is advisable to point out that it is a fact that Osorio knew of the existence of Angelina Fuentes.

[6] The case herein does not involve a situation under which the original complaint is filed against a specific person who is an adequate party and then another indispensable party is joined. Said question could be decided on the ground of the relationship that may exist between both. The case herein deals with an original complaint filed against nonexistent or fictitious persons.

See also, *Fitzpatrick* v. *Pitcairn*, 20 N. E. 2d. 280; *Schaffner* v. *B. & W. Auto Sales Co.*, 53 N. E. 2d 318 and *Goff* v. *Will County Nat. Bldg. Corporation*, 35 N. E. 2d 718, 719, in which latter case it is stated that the rule for joining the real party in interest as party defendant even under a wrong name, is not applicable where the real party in interest was not a party to the suit.

In *Davis* v. *Cohen Co.*, 268 U. S. 638, the National Supreme Court holds that an action erroneously brought against a railroad company when it should have been brought against the Director General, does not interrupt the running of the statute of limitations, and if an amended complaint is brought against said Director General after the time prescribed has elapsed, the amended complaint must be dismissed.

It is true that in California in *Day* v. *Western Loan & Bldg. Co.*, 108 P. 2d 702, it was held that an original complaint against fictitious defendants interrupts the running of the statute of limitations as to another amended complaint against those two defendants with their true names. However, said action arose out of an automobile accident. The original complaint was filed against James E. McWilliam, driver of the automobile, who, as plaintiff believed, owned the automobile, but plaintiff also included "First Doe, Second Doe and Third Doe" as defendants, alleging also that he did not know their true names, but if it should subsequently develop that they were, or any of them was the owner of the automobile, plaintiff could insert said true name or names. In the *Day* case a defendant, McWilliams, was originally included and against him a valid complaint was filed, being McWilliams connected with the real owner of the automobile. In the case at bar there was no valid original complaint against any particular person. In *Day* case, plaintiff correctly identified the owner of the car, with the exception of his name, and plaintiff ignored his true name. In the case at bar no defendant or heir whatsoever was originally identified and plaintiff did not ignore the name of the person

who should have been a party to the suit. *Day's* case, therefore, is not in point herein. Incidentally, in *Day's* case *Gates* v. *Wendling Nathan Co., supra,* is approved but distinguished and it is pointed out that in the *Gates* case no attempt at all was made to state a cause of action against five fictitiously named defendants and later other defendants who were, if at all, independently liable, were inserted in an amended complaint.

What we have set forth as to the *Day* v. *Western Loan & Bldg. Co., supra,* is applicable to *Maddux* v. *Gardner,* 192 S. W. 2d 14, where it was held that for the purpose of the statute of limitations the amended petition related back to the time of the filing of the original petition. The original petition was brought against a railroad company and against the engineer and the fireman of a train, alleging a railroad accident. The latter were named John Doe and Richard Roe, inasmuch as plaintiff knew their identity but ignored their real names which he later mentioned in the amended complaint. He originally filed a valid complaint against a particular defendant and this was a case of ignorance of the real name of the other two defendants. The situation differs from the one herein. If the original complaint is legally sufficient and a defendant is joined under a fictitious name inasmuch as, his identity but not his specific name is known, the complaint may be subsequently amended to insert the real name of the persons when it is known. But said rule must not be applied when the amendment as to that defendant is made after the expiration of the limitation period in a case in which the original complaint is legally insufficient because it was filed against nonexistent defendants without including an indispensable party as defendant, or where it is merely a case of ignorance as to the name of the party to the suit, although knowing his identity, or where as in the instant case, plaintiff originally knew the name and identity of a person who should have been included as defendant because she was an indispensable party.

■ Rule 19 (c) of our Rules of Civil Procedure provides as follows:

"In any pleading in which relief is asked, the pleader shall set forth the names, if known to him, of persons who ought to be parties if complete relief is to be accorded between those already parties, but who are not joined, and shall state why they are omitted." [7]

In the case at bar plaintiff knew the identity and the name of Angelina Fuentes, and yet failed to join her as a party defendant to the suit and to set forth the motives warranting her omission. Rule 19 (c) is applicable to necessary or indispensable parties and the non-compliance with said rule calls for the dismissal of the action. *United States* v. *Aetna Life Ins. Co. of Hartford, Conn.*, 46 F. Supp. 30, 6 Fed. Rules Serv. 19b. 1, case 5; *County of Platte* v. *New Amsterdam Casualty Co.*, 9 Fed. Rules Serv. 19a. 11, case 1 and 3 Moore's Federal Practice 2210, 2d ed. Under said rule, the original complaint presented in this case was legally insufficient.

■ Section 141 of our Code of Civil Procedure, which corresponds to § 474 of the California Code provides as follows:

"Section 141.—When the plaintiff is ignorant of the name of a defendant, he must state that fact in the complaint, and such defendant may be designated in any pleading or proceeding by any name, and when his true name is discovered, the pleading or proceeding must be amended accordingly."

This Section is applicable to a situation where a plaintiff knows the identity of a person but is ignorant of his real name. *Mercantile Trust Co.* v. *Stockton, etc. Co.*, 44 Cal. App. 558, 186 P. 1049 and *Bachman* v. *Cathry*, 113 Cal. 498. In order that plaintiff may amend his complaint under the afore-cited § 141, his ignorance of defendant's real name

---

[7] Considering the English text of Rule 19*(c)* of Federal Procedure, the phrase "but who are not joined" naturally refers to the persons who should have been parties.

918

must be real and not feigned, false or spurious. *Mercantile Trust Co.* v. *Stockton, etc. Co., supra.* Therefore, said § 141 is not controlling in this case. *Gates* v. *Wendling Nathan Co., supra.*

In this case the heirs of an estate who are unknown heirs were sued. It is a well-settled rule in this Supreme Court that the heirs of an estate as a juridical entity do not exist in our law. In order that the heirs of an estate may sue or be sued, the names of the successors must be expressed individually and in detail. *Heirs of Belaval* v. *Acosta,* 64 P.R.R. 104; *Arvelo et al.* v. *Banco Ter. y Agr.,* 25 P.R.R. 677; *Viera* v. *Goitía,* 55 P.R.R. 291, 295 and *Heirs of Rodríguez* v. *Industrial Commission,* 53 P.R.R. 784, 794. Where a complaint is brought against heirs of an estate, it should designate the names of each heir or give some reason to justify the omission of such requirement. *Dapena* v. *Estate of Dominicci,* 12 P.R.R. 64. In the case at bar no reason whatsoever was given to justify the omission of Angelina Fuentes as defendant, but on the contrary, the record shows the reasons why she should be included as a party defendant.

In *Bithorn* v. *Santana,* 68 P.R.R. 281, it was held that for the purpose of prescription, the date when a defendant is sued is inexorably fixed by the date he is first joined as a defendant. In said case, a complaint for damages against the insurer alone was filed within a year from the date of the accident, and more than a year after the accident has elapsed, an amended complaint joining the assured as a defendant for the first time was filed, the court holding that the original complaint against the insurer did not stop the running of the statute of limitations insofar as the assured was concerned. In the case before us, the facts are more cogent to justify our conclusion to the effect that Domingo Osorio's action has prescribed and was not interrupted by his original complaint, inasmuch as, in *Bithorn* v. *Santana, supra,* the original complaint at least joined the insurer as

defendant while in the instant case no particular person whatsoever was joined in the original complaint.

In *Vargas* v. *Alers*, 69 P.R.R. 215, it is held that, for the purposes of the limitation, an amended complaint must relate back to the date of the original complaint if both actions arise from and involve the same transaction or event. Rule 15(c) of our Rules of Civil Procedure. In said case the father brought an action for the death of his son within the one-year statutory period, and more than one year after the date of the accident, the complaint was amended to join the mother as co-plaintiff. It is held that the amended complaint had not prescribed since it dealt with the same conduct, transaction and occurrence. Said *Vargas* v. *Alers* did not deal with the omission in the original complaint of an indispensable party and it did not involve as here, an action instituted against non-existent or fictitious parties. Therefore, said case of *Vargas* v. *Alers*, *supra*, is not in point. We also believe that the criterion established in the afore-cited Rule 15(c) of allowing amendments to a complaint relating back to the date of the original pleading if both arise out of the same conduct, transaction or event is not applicable to a case in which the original complaint is fatally defective because it is instituted against fictitious defendants when at the time the original complaint was filed there existed an indispensable party whose identity and name were known by plaintiff.

We are aware of the fact that our decision in this case holding that Domingo Osorio's action has prescribed, and that his original pleading did not operate as an efficient interruption of the statute of limitations, deprives plaintiff herein of his opportunity to prove his status of natural son. However, he must suffer and assume the consequences of his very actions in not including Angelina Fuentes as a party defendant in the original complaint. It might be undesirable to cut short the opportunities of presumptive natural children of instituting their rights in court. Yet it is

920

our duty to maintain the integrity of the law. To hold that a plaintiff may establish a claim against fictitious defendants, when he knows the identity and the name of an indispensable party in the litigation, thereby depriving that indispensable party of the opportunity to object to plaintiff's claims, would be tantamount to establishing an unfair and dangerous judicial precedent which would tend, not only to deprive the real parties in interest of their opportunity to appear at the trial but which would also tend to destroy the stability of the prescription laws.

Inasmuch as we hold that Domingo Osorio's action against Angelina Fuentes has prescribed we arrive at the conclusion that the lower court acted incorrectly in overruling the motion for summary judgment presented by said defendant.

The decision appealed from will be set aside and instead a summary judgment dismissing definitively the amended complaint filed herein will be rendered.

Mr. Chief Justice Todd, Jr., did not participate herein.
Mr. Justice Pérez Pimentel did not take part herein.